[Crim. No. 2410.    Third Dist.    Nov. 18, 1953.]

THE PEOPLE, Respondent, v. JOSE PEREZ, Appellant.

Lloyd Allan Phillips, Jr., for Appellant.

Edmund G. Brown, Attorney General, and Gail Strader, Deputy Attorney General, for Respondent.

PAULSEN, J. pro tem.—Appellant was charged by indictment with two counts of murder. Count one charged that on the 16th day of May, 1952, he murdered one Michael Henderson. Count two charged that on the 15th day of May, 1952, he murdered one Joseph Lenz. Appellant entered a plea of not guilty and of not guilty by reason of insanity to each count of the indictment. At the conclusion of the trial of the issues raised by the pleas of not guilty, the jury returned a verdict of guilty of murder of the second degree as to each count. Thereafter, the same jury, following a trial upon the pleas of not guilty by reason of insanity, returned verdicts finding appellant was sane at the time of commission of each offense. This is an appeal from the judgment and the order denying a motion for a new trial.

The only grounds urged for a reversal are: (1) Alleged misconduct of the district attorney, and (2) refusal of the trial judge to admonish the jury in respect thereto. The alleged errors are set forth in an affidavit of the trial judge filed pursuant to this court's order permitting such augmentation of the record. It is thus attested:

"That during the closing arguments of James B. McKinney, in the trial of the defendant Jose Perez, on the issue of the plea of not guilty by reason of insanity, said Deputy District Attorney began his argument by stating substantially as follows:

" 'In my opinion you jurors caused a miscarriage of justice by your verdict returned finding this defendant guilty only of murder in the second degree.'

"That counsel for the defendant strenuously objected at this stage of the proceedings and cited this argument as being extremely prejudicial misconduct on the part of the Deputy District Attorney, and asked the court to instruct the jury

to disregard these remarks and to admonish Counsel for the People;

· ''That the Court failed to instruct the jury as requested, and failed to admonish Counsel for the People, it merely asking the Deputy District Attorney to proceed with his statements and arguments dealing with the trial of the case at hand.''

The argument advanced on behalf of appellant is that the deputy district attorney's remarks so influenced the jury that they concluded they must find the appellant was sane at the times the homicides were committed in order to rectify a mistake in not finding him guilty of murder of the first degree.

The questions we are called upon to determine are whether, from an examination of the whole record, the district attorney was guilty of misconduct, and, if so, whether such misconduct and the court's refusal to admonish were prejudicial to defendant's rights. (Const., art. VI, § 4½.) If this was misconduct, then such misconduct and the refusal to admonish constitute a miscarriage of justice within the meaning of the Constitution, unless different verdicts would have been improbable. (*People* v. *Hamilton,* 33 Cal.2d 45, 51 [198 P.2d 873].)

While no complaints are made concerning the first phase of the trial which resulted in the verdicts of guilty of murder of the second degree, it was stipulated that the evidence admitted at that time might be considered in the trial of the issues raised by the pleas of not guilty by reason of insanity.

At the time of the trial defendant was 26 years of age, and since early boyhood had spent most of his time in state institutions, including the Sonoma State Home for the feeble-minded, the Mendocino State Hospital, Terminal Island, and San Quentin and Folsom Prisons. It has never been seriously contended that he did not commit the homicides charged. At the time of the occurrences he, with other inmates, including the two victims, Henderson and Lenz, was confined in the medical ward at Folsom Prison. On the night in question, appellant had been drinking intoxicating liquor manufactured by the inmates from potatoes, yeast, sugar and fruit. It is unnecessary to recite in detail all the sordid events of that tragic night. There was abundant evidence to prove that appellant, without apparent provocation at that time, stabbed and fatally wounded Lenz while the latter was lying in his bed; that thereafter appellant wandered about the ward,

menacing the inmates with his knife and forcing several of them to submit to homosexual acts; that he thereafter threatened to kill several persons present and stated in particular that he was going to kill two "rats." Several hours after the first killing Michael Henderson was sitting in front of the prison hospital kitchen on what is known as a gurney. Appellant attempted to break into a cell but was unable to do so. He passed Henderson and several other inmates, uttering a greeting to one of them, turned, and suddenly stabbed Henderson in the left side.

While there was no direct evidence as to the motive for the killings, it was established that for some time appellant had been concerned and incensed because of "rats" and "stool pigeons," although there was nothing to show whom he referred to by such names. The evidence further showed that a knife that had disappeared some time before was found in the possession of appellant, obviously sharpened, and was used in the commission of the homicides. The evidence further discloses the fact that the ward was checked by guards every two hours during the night, and that at such times and after the first killing appellant retired to his bed and remained quiet until after each check was completed.

No attempt was made to deny the commission of the crimes by appellant, but it was seriously urged during the first phase of the case that appellant lacked the mental ability to deliberate and to perpetrate murder of the first degree; that the homicides were committed during periods of sudden anger or moments of terror, and it is conceded that appellant's counsel requested the jury to return verdicts of murder of the second degree. To support his contentions appellant called several witnesses, including two psychiatrists, who testified that in their opinion appellant could not have deliberated, and lacked the mental ability to commit a premeditated murder. The State also called psychiatrists who testified to the contrary, with the result that the trial of the issues raised by the pleas of not guilty was devoted largely to questions concerning the mental state of the appellant. The court at all times carefully explained the limited purpose of such testimony to the jury, and properly limited its application to the issues then before the court.

At the opening of the trial on the issues of insanity the court again explained the legal principles involved and the distinctions to be observed by the jury, as well as the question of burden of proof and the presumption of sanity.

Appellant called four witnesses, all inmates of Folsom Prison; all expressed the opinion that appellant was insane at the time of the commission of the homicides. Upon cross-examination, however, it appears obvious that they had in mind conduct of a character that might be designated as insanity by laymen but would have little tendency to prove legal insanity. In each case the events or actions narrated showed erratic behavior or conduct consistent with some form of mental disturbance falling short of legal insanity. Two psychiatrists were then produced by the State who carefully reviewed the whole medical history of appellant, including his experiences in other state institutions, and stated unequivocally that appellant knew the difference between right and wrong, fully understood the nature and consequences of his acts, and was legally sane at the time of the commission of the homicides.

The arguments of counsel and the instructions given by the court at the conclusion of the first phase of the trial are not a part of this record, but no complaints are made concerning them. It must be assumed, therefore, that the district attorney argued that appellant was guilty of murder of the first degree and that the court instructed the jurors that they were the exclusive judges of the evidence and the credibility of the witnesses, and that defendant was conclusively presumed to be sane for the purposes of that phase of the trial.

It is to be observed that the remarks of the district attorney and his statement that ''In my opinion you jurors caused a miscarriage of justice by your verdict returned finding this defendant guilty only of murder in the second degree,'' do not purport to show that his opinion was based on anything other than the evidence. The jury may well have understood that the statement was made in the light of the evidence and the instructions already given by the court. We are of the opinion, however, that such remarks were beyond the issues then being tried and could serve no legitimate purpose in the determination of such issues. Such a statement might well be construed by the jury as a charge of serious error on its part which could only be rectified by bringing in verdicts of sanity in the second phase of the trial. The refusal of the trial judge to admonish under such circumstances might well be construed as an approval by him of such remarks. We have no hesitancy in holding that error was committed, but a careful review of the whole record convinces us that it was not prejudicial. The verdicts of second degree murder could have resulted from a belief on the part

of the jury that the homicides were committed on impulse and without time for premeditation, or that appellant lacked the mental ability at that time to commit first degree murder. It is not possible to determine from the record what the views of the jury may have been on these questions. It may be conceded that there was a great deal of evidence which would warrant a finding that the defendant was a psychopathic personality or that he suffered from some mental or emotional derangement falling short of legal insanity, but such proof does not meet the requirements of the law. Defendant was presumed to be sane and it was incumbent upon him to show that at the time of the commission of the homicides he was not able to distinguish right from wrong or know the nature and consequences of his acts. The jury, under these circumstances, was required to make its findings according to the same legal standards and was not at liberty to substitute a lesser standard as a complete defense. Appellant's evidence, when measured by this standard, was almost negligible, and when it is weighed with the positive and unequivocal testimony produced by the State it is impossible to see how the jury could have followed the law and reached verdicts other than those rendered.

The judgment and the order are affirmed.

Van Dyke, P. J., and Schottky, J., concurred.